UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-60129-CR-SINGHAL/STRAUSS**

18 U.S.C. § 371
18 U.S.C. § 670
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

vs.

**LAZARO HERNANDEZ,**

          Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1.    The U.S. Food and Drug Administration (FDA) was the federal agency responsible for protecting the health and safety of the American public by, among other things, regulating the distribution and sale of prescription drugs and enforcing the Food, Drug, and Cosmetic Act (FDCA), Title 21, United States Code, Sections 301 et seq. One purpose of the FDCA was to ensure that drugs sold for use by humans were safe, effective, and bore labeling containing only true and accurate information.

2.    Federal law, including Title 21, United States Code, Section 360eee-1, generally required that prescription drugs sold in the United States be accompanied by product tracing

information, which consisted of transaction information, transaction history, and a transaction statement. The product tracing information identified, among other things, the product, the quantity, the lot number, strength and dosage, the date of each sale, and the parties to each transaction. Such product tracing information was commonly referred to in the industry as "T3s" or "pedigrees."

3. Under the FDCA, "drugs" were defined as, among other things, articles intended for use in the cure, mitigation, treatment, or prevention of disease, pursuant to Title 21, United States Code, Section 321(g)(1)(B). A "prescription drug" was any drug intended for use in humans that, because of its toxicity or potential for harmful effect, the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug, or was limited by an approved application under Title 21, United States Code, Section 355 to use under the professional supervision of a practitioner licensed by law to administer such drug, pursuant to Title 21, United States Code, Section 353(b)(1).

4. The introduction or delivery for introduction, or the causing thereof, into interstate commerce of any drug that was adulterated or misbranded was a violation of federal law, pursuant to Title 21, United States Code, Section 331(a).

5. A drug was adulterated if, among other things, any substance had been substituted in whole or in part for the drug, pursuant to Title 21, United States Code, Section 351(d).

6. A drug was misbranded if, among other things, its labeling was false or misleading in any particular, pursuant to Title 21, United States Code, Section 352(a)(1). A "label" was written, printed, or graphic matter upon the immediate container of the drug, while "labeling" was a broader term that included all labels and other written, printed, or graphic matter upon the drug or any of its containers or wrappers, or that accompanied the drug, pursuant to Title 21, United

States Code, Section 321(k) and (m).

## Prescription Drug Diversion

7. The term "prescription drug diversion" referred to the various ways in which prescription drugs were removed from regulated distribution channels and subsequently reintroduced into the wholesale marketplace. Common methods of prescription drug diversion included, but were not limited to, acquiring the drugs illegally through theft, fraud, or from individual patients for whom the prescription drugs had been prescribed and dispensed but intentionally not consumed. These diverted drugs were then reintroduced into the wholesale marketplace with false documentation concealing their true source and eventually resold to individual consumers by pharmacies, which also typically billed the drugs to "health care benefit programs," as defined by Title 18, United States Code, Section 24(b). Once diverted from the regulated distribution channel, it became difficult for regulators and consumers to know whether a prescription drug was altered, stored in improper conditions, had its potency adversely affected, or was otherwise harmful.

## The Defendant and Related Entities and Individuals

8. AllSource Medical Supply LLC ("AllSource Medical") was a limited liability company organized under the laws of the State of Florida with a business address of 2901 W Cypress Creek Road, #102C, Fort Lauderdale, Florida. AllSource Medical purported to provide legitimate prescription drugs, including expensive human immunodeficiency virus ("HIV") medication, to wholesale distributors of pharmaceutical products.

9. RSNE LLC ("RSNE") was a limited liability company organized under the laws of the State of Pennsylvania with a business address of 1650 Market Street, Suite 3600, Philadelphia,

3

Pennsylvania. RSNE purported to provide legitimate prescription drugs, including expensive HIV medication, to wholesale distributors of pharmaceutical products.

10. A1A Wholesale LLC ("A1A Wholesale") was a limited liability company organized under the laws of the State of New Jersey with a business address of 786 Mountain Boulevard, Suite 203A, Watchung, New Jersey. A1A Wholesale purported to provide legitimate prescription drugs, including expensive HIV medication, to wholesale distributors of pharmaceutical products.

11. Gentek LLC ("Gentek") was a limited liability company organized under the laws of the State of Connecticut with a business address of 45 Cedar Street, Unit 3, Stamford, Connecticut. Gentek purported to provide legitimate prescription drugs, including expensive HIV medication, to wholesale distributors of pharmaceutical products.

12. My Meds LLC ("My Meds") was a limited liability company organized under the laws of the State of Pennsylvania with a business address of 589 Bethlehem Pike, Suite 500, Montgomeryville, Pennsylvania. My Meds purported to provide legitimate prescription drugs, including expensive HIV medication, to wholesale distributors of pharmaceutical products.

13. MDSD Enterprises LLC was a limited liability company organized under the laws of the State of Florida with a business address of 10855 NW 1st Street, #304, Pembroke Pines, Florida.

14. WDS Distribution Corp was a corporation organized under the laws of the State of Florida with a business address of 5550 Glades Road, Boca Raton, Florida.

15. Elant Wholesale LLC was a limited liability company organized under the laws of the State of Florida with a business address of 3743 SW 153 Court, Miami, Florida.

16. Wholesale Company 1 was a company organized under the laws of the State of

Mississippi and a licensed distributor of pharmaceutical products.

17. Wholesale Company 2, a company organized under the laws of the State of Delaware with a principal place of business in Maryland, was a licensed distributor of pharmaceutical products.

18. Wholesale Company 3 was a company organized under the laws of the State of New York and a licensed distributor of pharmaceutical products.

19. Defendant **LAZARO HERNANDEZ**, a resident of Miami-Dade County, Florida, was a beneficial owner, operator, and agent of AllSource Medical, RSNE, A1A Wholesale, Gentek, and My Meds.

20. Individual 1, a resident of Broward County, Florida, worked at Wholesale Company 1.

21. Individual 2, a resident of Miami-Dade County, Florida, controlled MDSD Enterprises LLC, WDS Distribution Corp, and Elant Wholesale LLC.

## COUNT 1
### Conspiracy to Introduce Adulterated and Misbranded Drugs and to Defraud the United States
### (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April 2019, and continuing through in or around at least October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LAZARO HERNANDEZ,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Individual 1 and others, known and unknown to the Grand Jury:

(a) to commit an offense against the United States, that is, with the intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered for introduction into interstate commerce, adulterated and misbranded drugs, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2); and

(b) to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the FDA in its oversight and regulation of the interstate sale and distribution of drugs in the United States and its efforts to safeguard the health and safety of consumers who purchase drugs in the United States, in violation of Title 18, United States Code, Section 371.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for defendant **LAZARO HERNANDEZ** and his co-conspirators to unlawfully enrich themselves by selling and distributing adulterated, misbranded, and diverted drugs as if they had been acquired through the legitimate channels of distribution in the pharmaceutical market.

### Manner and Means of the Conspiracy

The manner and means by which defendant **LAZARO HERNANDEZ** and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **LAZARO HERNANDEZ** and his co-conspirators established and obtained

wholesale drug distributor licenses for limited liability companies in Florida, New Jersey, Connecticut, New York, and elsewhere, including, but not limited to, AllSource Medical, A1A Wholesale, Gentek, and My Meds.

5. **LAZARO HERNANDEZ** and his co-conspirators acquired large quantities of diverted prescription drugs, including HIV medication, that could be billed to health insurers for thousands of dollars for each 30-day supply of the medication.

6. **LAZARO HERNANDEZ** and his co-conspirators repackaged these drugs and falsified their packaging, T3s/pedigrees, and other labeling to make it appear as though the drugs had been properly acquired through legitimate and regulated channels of distribution.

7. **LAZARO HERNANDEZ** and his co-conspirators introduced these adulterated, misbranded, and diverted drugs into interstate commerce by selling and distributing them to co-conspirators at Wholesale Company 1, Wholesale Company 2, and Wholesale Company 3 at steep discounts, far below the pricing available when the drugs were sold through legitimate channels of distribution.

8. Co-conspirators at Wholesale Companies 1 through 3 paid **LAZARO HERNANDEZ** and other co-conspirators more than $230 million for these adulterated, misbranded, and diverted drugs.

9. Co-conspirators at Wholesale Companies 1 through 3 resold and shipped these adulterated, misbranded, and diverted drugs, along with their falsified labeling and documentation, to pharmacies located throughout the United States, which billed health care benefit programs for the drugs and dispensed the drugs to unsuspecting consumers.

10. **LAZARO HERNANDEZ** and his co-conspirators used the proceeds of the fraud for their own benefit, and the benefit of others, and to further the fraud.

## Overt Acts

In furtherance of the conspiracy, and to achieve its objects, at least one member of the conspiracy committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts:

1. On or about June 12, 2019, **LAZARO HERNANDEZ** met with Individual 1 and other co-conspirators in Broward County, Florida, to discuss the sale of HIV drugs at steeply discounted prices.

2. On or about July 8, 2019, a co-conspirator sent Individual 1 an email with a list of diverted drugs available for sale by A1A Wholesale.

3. On or about September 4, 2019, **LAZARO HERNANDEZ** and other co-conspirators established Gentek as a limited liability company in Connecticut.

4. On or about September 27, 2019, co-conspirators sent a shipment of diverted drugs to Wholesale Company 1 via interstate commerce.

5. On or about October 16, 2019, **LAZARO HERNANDEZ** sent Individual 1 a text message stating, "Dint u get the 400 I sent thru A1A?"

6. On or about October 24, 2019, **LAZARO HERNANDEZ** sent Individual 1 a text message stating, "Can I send you like 40 Truvada with no back pack thru all source?"

7. On or about November 4, 2019, co-conspirators at Wholesale Company 1 sent a payment of approximately $957,119 to AllSource Medical for diverted drugs.

8. On or about November 12, 2019, **LAZARO HERNANDEZ** and other co-conspirators wired approximately $233,000 from AllSource Medical to RSNE as a purported payment on an invoice.

9. On or about December 3, 2019, co-conspirators at Wholesale Company 1 sent a payment of approximately $1,327,046 to AllSource Medical for diverted drugs.

10. On or about December 5, 2019, **LAZARO HERNANDEZ** met with Individual 1 and another co-conspirator in Fort Lauderdale, Florida, to discuss the sale of discounted and diverted HIV drugs.

11. On or about April 30, 2020, **LAZARO HERNANDEZ** and other co-conspirators opened a business bank account in the name of Gentek at a Citizens Bank in Connecticut.

12. On or about June 4, 2020, **LAZARO HERNANDEZ** and other co-conspirators opened a business bank account in the name of My Meds at a Wells Fargo Bank in Pennsylvania.

13. On or about June 10, 2020, a co-conspirator sent an email to a co-conspirator at Wholesale Company 2 with a list of diverted drugs available for sale by Gentek.

14. On or about June 15, 2020, a co-conspirator sent an email to a co-conspirator at Wholesale Company 2 with falsified pedigrees for the diverted drugs sold by Gentek.

15. On or about June 18, 2020, co-conspirators at Wholesale Company 2 sent a payment of approximately $239,025 to Gentek for diverted drugs.

16. On or about June 24, 2020, a co-conspirator sent an email to a co-conspirator at Wholesale Company 3 attaching a document signed by the purported owner of Gentek representing, among other things, that the diverted drugs sold by Gentek "shall not have been adulterated, mislabeled or misbranded within the meaning on any Laws relating to branding, adulteration or quality of goods and the Products shall not have been re-labeled or re-packaged in any manner and shall not violate in any way any Laws or applicable U.S. Food and Drug Administration requirements."

17. On or about July 7, 2020, a co-conspirator sent an email to a co-conspirator at Wholesale Company 3 with falsified pedigrees for the diverted drugs sold by Gentek.

18. On or about July 14, 2020, co-conspirators at Wholesale Company 3 sent a payment of approximately $350,122 to Gentek for diverted drugs.

19. On or about July 28, 2020, **LAZARO HERNANDEZ** and other co-conspirators opened a business bank account in the name of Gentek at a TD Bank in Connecticut.

20. On or about October 5, 2020, co-conspirators at Wholesale Company 3 sent a payment of approximately $1,115,085 to Gentek for diverted drugs.

21. On or about January 20, 2021, co-conspirators at Wholesale Company 2 sent a payment of approximately $700,000 to Gentek for diverted drugs.

22. On or about February 24, 2021, co-conspirators at Wholesale Company 3 sent a payment of approximately $2,000,000 to Gentek for diverted drugs.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
**Conspiracy to Traffic in Pre-Retail Medical Products with False Documentation**
**(18 U.S.C. § 670)**

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April 2019, and continuing through in or around at least October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LAZARO HERNANDEZ,**

an owner and agent of an organization in the supply chain for pre-retail medical products, did knowingly and willfully combine, conspire, confederate, and agree with Individual 1 and others,

10

known and unknown to the Grand Jury, to knowingly and falsely make, alter, forge, and counterfeit the labeling and documentation of pre-retail medical products, and to knowingly possess, transport, and traffic in pre-retail medical products involving false, altered, forged, and counterfeited label and documentation, in and using a means and facility of interstate commerce, in violation of Title 18, United States Code, Sections 670(a)(2) and (3).

All in violation of Title 18, United States Code, Sections 670(a)(6) and (b)(1).

## COUNT 3
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around July 2019, and continuing through in or around at least October 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**LAZARO HERNANDEZ,**

did knowingly and voluntarily combine, conspire, confederate, and agree with Individual 2 and others, known and unknown to the Grand Jury, to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is an offense involving a Federal health care offense, namely, a conspiracy to introduce into interstate commerce adulterated and misbranded drugs, in violation of Title 18, United States Code, Section 371, that relates to a health care benefit program, and the introduction into interstate commerce of adulterated and misbranded drugs, in violation of Title 21, United States Code, Section 331(a), that relates to a health care benefit program.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 4-6
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LAZARO HERNANDEZ,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

| COUNT | APPROXIMATE DATE OF TRANSACTION | DESCRIPTION OF TRANSACTION |
|---|---|---|
| 4 | October 22, 2019 | Electronic wire transfer in the approximate amount of $121,078 from RSNE, LLC JP Morgan Chase bank account ending in 0091 into WDS Distribution Corp Regions Bank account ending in 9454 |
| 5 | February 17, 2021 | Electronic wire transfer in the approximate amount of $198,456 from Gentek LLC Citizens bank account ending in 4795 into Elant Wholesale LLC Citibank account ending in 6832 |
| 6 | February 19, 2021 | Electronic wire transfer in the approximate amount of $250,000 from My Meds LLC Wells Fargo bank account ending 5667 into MDSD Enterprises LLC JP Morgan Chase account ending in 5301 |

It is further alleged that the specified unlawful activity is an offense involving a Federal health care offense, namely, a conspiracy to introduce into interstate commerce adulterated and misbranded drugs, in violation of Title 18, United States Code, Section 371, that relates to a health care benefit program, and the introduction into interstate commerce of adulterated and misbranded drugs, in violation of Title 21, United States Code, Section 331(a), that relates to a health care benefit program.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 982(a)(7) and 18 U.S.C. § 982(a)(1))

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **LAZARO HERNANDEZ**, has an interest.

2. Upon conviction of any violation of Title 21, United States Code, Section 331, or a conspiracy to commit such an offense, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with a third party;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(7), Title 28, United States Code, Section 2461(c), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

*[signature]*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

*[signature]*
TIMOTHY J. ABRAHAM
ASSISTANT UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

DUSTIN DAVIS, ACTING DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*[signature]* For
ALEXANDER THOR POGOZELSKI
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

LAZARO HERNANDEZ,

_____/
Defendant.

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☒ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take 11 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☒ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
Alexander Thor Pogozelski
DOJ Trial Attorney
Court ID No.   A5502549

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **LAZARO HERNANDEZ**

Case No: _____

Count #: 1

Title 18, United States Code, Section 371

Conspiracy to Introduce Adulterated and Misbranded Drugs and to Defraud the United States
* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000 fine or twice the gross gain or loss resulting from the offense

Count #: 2

Title 18, United States Code, Section 670

Conspiracy to Traffic in Pre-Retail Medical Products with False Documentation
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: Three times the economic loss attributable to the violation or $1,000,000

Count #: 3

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: _____**LAZARO HERNANDEZ**_____

Case No: _____


Counts #:   4 – 6

___Title 18, United States Code, Section 1956(a)(1)(B)(i)_____

___Money Laundering_____
* Max. Term of Imprisonment:   20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release:   3 years as to each count
* Max. Fine:   $500,000 or twice the value of the property involved in the transaction

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.